IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

QUINTEZ CEPHUS,

       Plaintiff,

    v.                           Case No. 21C0126

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN
SYSTEM, LAUREN HASSELBACHER,
AND REBECCA BLANK,

       Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9451 (Bensky)
(608) 266-9230 (Peacock)
(608) 294-2907 (Fax)
benskyam@doj.state.wi.us
peacockam@doj.state.wi.us

TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................1

CLAIMS AND DEFENSES .............................................................4

LEGAL STANDARD ......................................................................7

ARGUMENT ..................................................................................8

    I.    Cephus has failed to state a due process claim. ...........................8

        A.    Cephus has not pled facts that plausibly allege
            deprivation of a liberty or property interest. .......................9

            1.    Cephus cannot state a "stigma-plus" liberty
                 interest claim. .............................................................9

                 a.    Cephus did not allege the Defendants
                      disclosed information that harmed his
                      reputation. ....................................................... 10

                 b.    By alleging he obtained employment with
                      the National Football League, Cephus
                      cannot prove it will be "virtually
                      impossible" to work in his chosen field. .......... 12

            2.    Cephus did not allege deprivation of a property
                 interest. ................................................................ 13

        B.    Cephus received constitutionally sufficient process. ......... 15

        C.    The university's disciplinary proceedings did not
            present Cephus with an unconstitutional choice. .............. 19

        D.    Cephus has not exhausted available state procedures. ...... 23

        E.    The individual defendants are entitled to qualified
            immunity. .......................................................................... 24

Page

  F. Official capacity claims against Blank and Hasselbacher must be dismissed because they are not persons under 42 U.S.C. § 1983. ......................................... 27

II. Cephus's Title IX claim must be dismissed because he did not allege facts that could plausibly prove he was discriminated against on the basis of sex. .................................... 29

III. Cephus's contract claim against the Board must be dismissed based on state sovereign immunity and because he did not satisfy the conditions precedent to file a contract action. ......................................................................... 33

IV. Cephus's estoppel and reliance claim against the Board must be dismissed based on state sovereign immunity and because he did not plead compliance with Wisconsin's Notice of Claim statute. ..................................................................... 36

CONCLUSION ................................................................ 39

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

QUINTEZ CEPHUS,

      Plaintiff,

     v.                          Case No. 21C0126

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN
SYSTEM, LAUREN HASSELBACHER,
AND REBECCA BLANK,

      Defendants.

---

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS**

---

## INTRODUCTION

In the spring of 2018, the University of Wisconsin-Madison received a complaint that plaintiff Quintez Cephus, a UW-Madison student and member of the football team, sexually assaulted two students. UW-Madison's Title IX Coordinator, Lauren Hasselbacher, investigated the allegations over about five months. During that time, she met with Cephus and his attorney, solicited information and evidence from them, shared three draft reports with Cephus's attorneys, and in October 2018, forwarded her final investigative report to the Dean of Students office. On October 30, 2018, Assistant Dean of Students,

Ervin Cox, issued a finding of responsibility and proposed expulsion. (Dkt. 1. ¶¶ 99, 131, 138, 145, 152, 164-177.)

UW-Madison empaneled a hearing committee and held a hearing on January 15, 2019, wherein Cephus was represented by an attorney and the two complainants appeared via video-conferencing and were subject to cross-examination questions funneled through the hearing committee chair (who did not re-ask the questions verbatim). (Dkt. 1 ¶ 180, 183, 184, 191-192.) Cephus chose not to testify on his own behalf. (Dkt. 1 ¶ 196.) Following the hearing, Cephus was found responsible for sexual assault and was expelled. Cephus appealed the decision through Chancellor Rebecca Blank and the Board of Regents, who both upheld the Committee's findings. (Dkt. 1 ¶¶ 198-202.)

Meanwhile, the Dane County District Attorney's office had charged Cephus with sexual assault, and in August of 2019, following a jury trial, Cephus was acquitted of all charges. (Dkt. 1 ¶¶ 153, 206.) He petitioned for reinstatement to the university and submitted evidence used during trial that had not been disclosed to UW-Madison during the student disciplinary process. Chancellor Blank lifted the expulsion and Cephus was reinstated to the football team. (Dkt. 1 ¶¶ 208-209, 212.) Following the 2019-2020 season, Cephus was drafted into the National Football League. (Dkt 1 ¶¶ 213 – 216.)

Despite being drafted into the NFL, and despite the extensive pre-deprivation procedure afforded to him, Cephus alleges the Defendants

deprived him of his liberty interest to pursue the career of his choice without due process of law. Cephus also alleges the Board of Regents violated Title IX of the Education Amendments Act of 1972, by discriminating against him on the basis of sex (male).[1] The Complaint insinuates—without reference to specific facts—that the Defendants are biased against men, because: 1) in 2011, the federal Department of Education (ED) issued a "Dear Colleague Letter" asking schools to eliminate sexual harassment and prevent its occurrence; 2) in 2014, the ED issued a second Dear Colleague Letter threatening to withhold federal funding from schools that failed to investigate sexual assault complaints; and 3) the ED's Office of Civil Rights had investigated UW-Madison for allegedly mishandling sexual assault allegations. (Dkt. 1 ¶¶ 24-40, 47-49.) Cephus's Complaint further asserts UW-Madison discriminates against men because it had been criticized by the student newspaper[2] and the public for failing to address campus sexual assault, because UW-Madison had instituted training and educational programs to prevent sexual assault, and because UW-Madison had committed

---

[1] Jane Doe, one of the women who asserted Cephus sexually assaulted her, also sued the Board of Regents and Chancellor Blank, alleging the university discriminated against her on the basis of sex (female) and alleging violation of her due process rights. *Doe v. Board of Regents, et al*, WD WI Case No. 20-cv-00856-wmc.

[2] The Badger Herald, UW-Madison's student newspaper, is the nation's largest fully independent student newspaper located in Madison, Wisconsin. *See* https://badgerherald.com/about/

to responding swiftly and with compassion to sexual assault allegations. (Dkt. 1 ¶¶ 82, 84, 94.)

Cephus's Complaint, however, must be dismissed for failure to state a claim. In short, his Complaint alleges too much but not enough. He did not allege facts, beyond generalized speculation, that his sex motivated the university's decisions, and he pled himself out of court by alleging he obtained employment in his desired field and by alleging facts demonstrating he received constitutionally adequate process.[3]

## CLAIMS AND DEFENSES

Plaintiff's claim against Hasselbacher and Blank—brought via 42 U.S.C. § 1983—alleges deprivation of a liberty interest without due process, resulting in reputational damage. In this "stigma-plus" claim, Cephus asserts Defendants wrongly expelled him from school and branded him a sex offender after they proceeded with university disciplinary proceedings despite pending criminal charges. He asserts that as a result, he lost value in the NFL draft.

This claim should be dismissed in its entirety. First, Cephus did not plead that the Defendants disclosed information that damaged his reputation, as is required to state a stigma-plus due process claim. *Doe v. Purdue Univ.,*

---

[3] Cephus alleged two state law claims, which must be dismissed based on sovereign immunity and failure to follow state-mandated filing pre-requisites. This court should either dismiss those or decline to exercise supplemental jurisdiction over them. *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015).

928 F.3d 652, 661 (7th Cir. 2019). Rather, Cephus pled he was criminally charged with sexual assault, *he* issued a statement informing the public he was forced to take a leave of absence from the football team while the charges were being pursued, and he "was expelled and plastered across the media as a sex offender." (Dkt. 1 ¶¶ 153-154, 249.) But Cephus never asserted the Board, Hasselbacher, or Blank disseminated information that harmed his reputation, as is required to state a stigma plus claim in this judicial circuit. *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997); *see also Doe v. Trustees of Indiana Univ.*, No. 120CV00123JRSDML, 2020 WL 6274816, at *3 (S.D. Ind. Oct. 26, 2020) (citing *Olivieri*).

Consequently, Cephus's Complaint did not allege Hasselbacher or Blank disseminated information that harmed his reputation. To state a 42 U.S.C. § 1983 claim, a plaintiff must allege the named defendant was personally involved in the alleged constitutional violation. For a stigma-plus claim, this means the plaintiff must allege each defendant disseminated information that harmed his reputation. He has not done so. Hasselbacher and Blank must be dismissed for lack of personal involvement.

Second, to survive a motion to dismiss, a plaintiff alleging stigma-plus deprivation of liberty must aver "reputational harm [that] made it 'virtually impossible' for him to find employment in his chosen profession." *Doe v. Purdue Univ.*, 928 F.3d at 661. Here, Cephus alleged his desired career was to play for

5

the NFL and he achieved that goal. (Dkt. 1 ¶¶ 99-100, 213-216.) Because Cephus found employment in his chosen field, he cannot prove the level of stigma necessary to state a claim. To the extent Cephus alleged a procedural due process claim for deprivation of a property interest, it too must be dismissed because he did not allege deprivation of a property right recognized under Wisconsin Law. Regardless of whether Cephus alleged deprivation of a liberty or property interest, he pled the university provided constitutionally adequate procedures, negating his due process claim. Moreover, the State of Wisconsin provides adequate post-deprivation procedures to address alleged procedural irregularities. His due process arguments could, and should, have been made in state court.

Cephus's due process claims fail for another reason: qualified immunity bars them. No clearly established law holds that university officials violate the Constitution when they investigate, adjudicate, or decide Title IX complaints while criminal charges are pending, which is the gravamen of Cephus's claim.

Plaintiff's second claim alleges the Board of Regents[4] violated Title IX by discriminating against him based on sex when it held a student disciplinary hearing despite his request for a stay of proceedings, and despite the alleged unavailability of certain exculpatory information. This claim must be

---

[4] The Complaint lists the defendant as "UW-Madison." The university, however, is not a suable entity. The proper defendant is the Board of Regents.

dismissed because Cephus did not plead facts beyond speculation that the Board's actions were because of his sex.

Plaintiff's third claim is against the Board of Regents and alleges breach of contact. This claim must be dismissed based on state sovereign immunity and for failure to follow the statutory process for making contract claims against the state.

Plaintiff's fourth claim is against the Board of Regents and alleges estoppel and reliance. This claim must be dismissed based on state sovereign immunity and failure to plead compliance with Wisconsin's Notice of Claim statute, Wis. Stat. § 893.82(3).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A motion to dismiss tests the sufficiency of the complaint; it does not determine the merits of the lawsuit. *See Triad Assocs., Inc. v. Chi. Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989). To survive a Rule 12(b)(6) challenge, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that it "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).

Deciding a motion to dismiss, courts must accept the factual allegations as true, *see id*. at 572, in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). However, a complaint cannot simply contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must include specific allegations that, if true, make the plaintiff's claim for relief more than speculative. *See Twombly*, 550 U.S. at 555. A complaint must be dismissed if it offers only "labels and conclusions," "formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

While a motion to dismiss tests the sufficiency of the complaint, "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo,* 526 F.3d at 1086 (citing *Massey v. Merrill Lynch & Co*., 464 F.3d 642, 650 (7th Cir. 2006)).

## ARGUMENT

### I.    Cephus has failed to state a due process claim.

Cephus asserts Chancellor Blank and Lauren Hasselbacher deprived him of liberty in violation of the due process clause by wrongly branding him a sex offender. He further asserts that because of the expulsion, he "still had to face the growing fraction of the country that 'believes all women' regardless of

8

evidence to the contrary." (Dkt. 1 ¶ 247, 251.) Cephus alleges Hasselbacher's decision to pursue Title IX procedures while his criminal case was pending prevented the university from obtaining exculpatory evidence that would not be available until the criminal case concluded. (Dkt. 1 ¶ 248.) Cephus also appears to assert (though he did not specifically plead the claim) that Hasselbacher and Blank deprived him of a property right to his education, because, among other things, they moved forward with Title IX disciplinary proceedings before the criminal case concluded.

To demonstrate a procedural due process violation, a plaintiff must establish (1) a cognizable liberty or property interest recognized by state law; (2) a deprivation of that liberty or property interest; and (3) a denial of due process. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Cephus has not pled facts to plausibly satisfy any of these elements.

### A.   Cephus has not pled facts that plausibly allege deprivation of a liberty or property interest.

#### 1.   Cephus cannot state a "stigma-plus" liberty interest claim.

"'It is well-settled that an individual has no cognizable liberty interest in his reputation.'" *Mann v. Vogel*, 707 F.3d at 878 (quoting *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (citing *Paul v. Davis,* 424 U.S. 693, 711-12 (1976))).  Any harm or injury to an interest in reputation, even where inflicted by an officer of the state, does not result in a deprivation of liberty and does

9

not invoke the procedural protection of the due process clause. *Paul*, 424 U.S. at 712.

To properly plead a stigma-plus claim, a plaintiff must allege facts that, if true, could prove 1) the state disclosed information that damaged his reputation, 2) the reputational harm made it "virtually impossible" for him to achieve employment in his chosen profession, and 3) his legal status was altered. *Doe v. Purdue Univ.,* 928 F.3d at 661. Cephus's claim must be dismissed because he did not allege the defendants disclosed information about him and because he attained employment in the NFL, thereby demonstrating he achieved employment in his chosen profession.

### a.   Cephus did not allege the Defendants disclosed information that harmed his reputation.

To satisfy the disclosure requirement, a plaintiff must allege the defendant published information that harmed his reputation, or that the plaintiff was compelled, or will be compelled, to publish the harmful information. *Doe v. Trustees of Indiana Univ.*, 2020 WL 6274816, at *3 "[D]issemination by the defendant and not by the plaintiff is a strict requirement in stigma-plus claims in the Seventh Circuit." *Doe v. Purdue*, 928 F.3d at 661 (citing *Olivieri v. Rodriguez,* 122 F.3d at 408–409).

In *Doe v. Trustees of Indiana University*, the plaintiff, a man found responsible for personal misconduct on campus, asserted he was deprived of a

liberty interest without due process. The court dismissed this stigma-plus claim because he did not plead the university disclosed stigmatizing information, and the court rejected his argument that the publication test would be satisfied if *he* had to disclose his academic record in order to apply to graduate school. 2020 WL 6274816, at *2-3. By contrast, in *Doe v. Purdue*, the plaintiff was legally obligated to authorize Purdue University disclose his disciplinary record to the Navy, thus satisfying the disclosure requirement. 928 F.3d at 662.

Here, Cephus alleged *he* issued a statement informing the public he was forced to take a leave of absence from the football team pending the criminal charges. (Dkt. 1 ¶ 154.) He asserted he was expelled from the university and "plastered across the media as a sex offender." He faced a criminal trial and was absent from college football for an entire season, which "inevitably affected the NFL scout's perception of Plaintiff as well as Plaintiff's ability to prepare physically." (Dkt. 1 ¶¶ 198, 205, 214, 249.) But these assertions fall short of the requirement that, to state a claim, a plaintiff must allege the specific government officials disseminated the stigmatizing information to the public. *Head v. Chicago Sch. Reform Bd. of Trs.,* 225 F.3d 794, 801 (7th Cir. 2000). The fact of an expulsion, alone, does not satisfy this requirement. *See, e.g., Hedrich v. Bd. of Regents of Univ. of Wis. Sys.,* 274 F.3d 1174, 1184 (7th Cir. 2001) (holding denial of tenure or employment "is only stigmatizing if it is

11

accompanied by a publicly announced reason that impugns the employee's moral character or implies dishonesty or other job-related moral turpitude.") (citations and quotation marks omitted). Here, Cephus never alleged Blank or Hasselbacher disclosed harmful information about him to the public, and this omission is fatal to his claim.

> **b. By alleging he obtained employment with the National Football League, Cephus cannot prove it will be "virtually impossible" to work in his chosen field.**

The second element of a stigma-plus claim requires the plaintiff to demonstrate his "good name, reputation, honor or integrity [were] called into question in a manner that makes it virtually impossible for the employee to find new employment in his chosen field." *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001). To constitute deprivation of liberty, the negative stigma imposed on the plaintiff must "have the effect of blacklisting" the plaintiff from his chosen profession. *Id.* In *Townsend*, the Seventh Circuit affirmed summary judgment for a school administrator on a stigma-plus claim brought by a discharged employee because the employee had retained another job in his chosen profession. *Id.* The court explained that a stigma-plus claim requires "future employment opportunities [to] have been curtailed *so significantly* that a liberty interest was implicated. *Id.* at 670-71 (emphasis added) (citing *Zaky v. United States Veterans Admin.,* 793 F.2d 832, 840 (7th Cir. 1986)). For

example, in *Doe v. Purdue University*, the plaintiff adequately stated a "stigma plus" claim because he alleged the defendant's action in suspending him resulted in him being expelled from his ROTC program, which in turn deprived him of his ability to pursue employment in the military. *Id.* at 662-63.

Cephus cannot prove his future employment opportunities were significantly curtailed. After the sanctions against Cephus were lifted, Cephus was deemed eligible to play on the university's football team, "was a standout in the 2019-2020 season," and was drafted into the NFL as a 5th round draft pick. He alleges that but for the expulsion, he would have been a 2nd round draft pick, but this nuance does not violate the Constitution. (Dkt. 1 ¶¶ 209-215). Cephus's constitutional liberty to pursue his chosen career is not implicated because he attained employment in the NFL.

### 2.    Cephus did not allege deprivation of a property interest.

Seventh Circuit case law dictates that a college education itself is not a property interest; to state a claim, a plaintiff must allege a specific entitlement under state law or contract. *Doe v. Purdue Univ.*, 928 F. 3d at 660. While kindergarten through twelfth grade public school students generally have a property interest in continued education such that they cannot be expelled without due process protections, *Goss v. Lopez*, 419 U.S. 565, 577 (1975), the Seventh Circuit has rejected "the bald assertion that any student who is

suspended from college has suffered a deprivation of constitutional property."
*Doe v. Purdue Univ.*, 928 F.3d at 660 (citing *Williams v. Wendler*, 530 F.3d 584,
589 (7th Cir. 2008)).

In the present case, Cephus generally alleges contractual promises with
the university but did not include facts demonstrating an entitlement under
Wisconsin law to an uninterrupted college education. (*See* Dkt. 1 ¶¶ 217 – 230.)
The general allegation is not enough to state a claim for deprivation of
property. "[A] university student must do more than show that he has a
contract with the university; he must establish that the contract entitled him
to the specific rights that the university allegedly took, 'such as the right to a
continuing education or the right not to be suspended without good cause.'" *Id.*
(quoting *Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F. 3d 599, 601 (7th Cir. 2009)).
To state a valid due process claim, "the student's complaint must be specific
about the source of this implied contract, the exact promises the university
made to the student, and the promises the student made in return." *Id.*
(quoting *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F. 3d 769, 773 (7th
Cir. 2013.))

Here, just as in *Doe v. Purdue University*, Cephus has "not adequately
alleged that [the Defendants] deprived him of property because his complaint
does not point to any specific contractual promise that [the Defendants]
allegedly broke." *Id.*

14

Cephus did not allege facts demonstrating the Defendants deprived him of constitutionally protected liberty or property, so his claim must be dismissed.

### B. Cephus received constitutionally sufficient process.

Even if Cephus adequately alleged the Defendants deprived him of a liberty or property interest, he must show the procedures afforded to him were fundamentally unfair. *Doe v. Purdue Univ.*, 928 F.3d at 663 (citing *Goss*, 419 U.S. at 574). While due process is a flexible inquiry dependent upon the circumstances, a University conducting disciplinary proceedings that may result in expulsion must, at a minimum, afford the plaintiff notice and an opportunity to be heard "at a meaningful time and manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted).

"[T]he due process rights of students facing discipline in an educational setting are not the same as those afforded to defendants in a criminal or quasi-criminal setting." *Marshall v. Indiana Univ.,* 170 F. Supp. 3d at 1207 (S.D. Ind. 2016). Due process does not require schools to conduct judicial or quasi-judicial trials before punishing misconduct. *Coronado v. Valleyview Pub. Sch. Dist. 365-U*, 537 F.3d 791, 795 (7th Cir. 2008) (quotation and citation omitted). There is no requirement under *Brady v. Maryland* that the University obtain all potentially exculpatory evidence before the disciplinary proceeding may commence. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 662 (S.D. Ohio 2016);

*see also Medlock v. Trs. Of Ind. Univ.*, 738 F.3d 867, 871 (7th Cir. 2013) (declining to "encourage further bureaucratization by judicializing university disciplinary proceedings, mindful also that one dimension of academic freedom is the right of academic institutions to operate free of heavy-handed governmental, including judicial, interference.") (citing *Osteen v. Henley*, 13 F.3d 221, 225–26 (7th Cir. 1993)).

Here, Cephus alleged: 1) Hasselbacher sent him a notice of charge letter and offered to meet with him (Dkt 1, ¶¶ 138-140); 2) Cephus and his attorney met with Hasselbacher so she could explain the University's process and schedule and interview, but because he was criminally charged, Cephus invoked his Fifth Amendment right to remain silent (Dkt 1, ¶¶ 152-155); 3) Hasselbacher issued three draft reports before issuing a final, all of which Cephus's attorney reviewed and responded to (Dkt. 1 ¶ 164-174); 4) Cephus was represented by an attorney during the hearing, who was allowed to submit cross-examination questions to the complaining witnesses (who appeared via videoconference) through a university official (Dkt. 1 ¶¶ 184-195); 5) that following the not-guilty verdict in the criminal case, Cephus's lawyers submitted new evidence to Chancellor Blank, who reviewed it, changed the sexual assault finding, and lifted sanctions against him. (Dkt. 1 ¶¶ 209-215.)

Cephus pled himself out of court. He primarily argues the university should have suspended disciplinary proceedings pending the criminal trial. He

asserted the District Attorney refused to give the university certain evidence, and Cephus's attorneys, who were aware of available exculpatory evidence— and, per Wisconsin criminal discovery law—were entitled to it, Wis. Stat. § 971.23, chose not to provide it to the university. (Dkt. 1 ¶¶ 144-145, 159, 205.)

As Cephus correctly alleged, 2017 Q&A guidance from the ED requires investigators to "synthesize all *available* evidence— including both inculpatory and exculpatory evidence…."[5] (Dkt. 1 ¶ 60) (emphasis added). According to the Complaint, this is what the university did: they sought out evidence, asked Cephus and his attorney to provide evidence, and compiled all information that was available. The fact that Cephus and his attorney chose to not submit evidence in their possession (Dkt. 1 ¶¶ 155, 205) does not transform Hasselbacher and Blank into biased officials who violated the Constitution. As explained in Section C, below, no court has ever held as much.

Cephus also alleges Hasselbacher, the Title IX coordinator, was biased against men because she had worked as an investigator at CU Boulder, investigating allegations of sexual misconduct on campus, worked for Domestic Abuse Intervention Services, and acted as a legal advocate addressing sexual assault during law school. (Dkt. 1 ¶¶ 77, 83.) But Hasselbacher's prior work

---

[5] Wisconsin already had in place many due process protections required under the new Title IX rule (enacted over 18 months after Cephus's hearing). *See, https://docs.legis.wisconsin.gov/code/register/2020/776a3/register/em /emr2027_rule_text/emr2027_rule_text*

experience lacks the specificity required to overcome the presumption that university officials are impartial. *Doe v. Purdue Univ.*, 928 F.3d at 664 (citing *Hess,* 839 F.3d at 675). As the Seventh Circuit recently explained:

> To rebut the presumption that university administrators are honest and impartial, a plaintiff must lay a specific foundation of prejudice or prejudgment such that the probability of actual bias is too high to be constitutionally tolerable. This burden is heavy indeed, typically requiring evidence that the adjudicator had a pecuniary interest in the outcome of the case, or that he was previously the target of the plaintiff's abuse or criticism.

*Id*. (citing *Id*.) (quotations omitted).

Cephus's remaining concerns likewise do not rise to the level of violating due process. His attorney's ability to cross-examine complaining witnesses only through questions submitted to a university chairperson does not violate due process. *See Doe v. Univ. of Cincinnati,* 872 F.3d 393, 404-05 (6th Cir. 2017) (holding questioning a complainant via "written preapproved questions" is permissible). Cephus's assertions that the university deviated from its own policies and procedures is likewise insufficient to state a due process claim. *See Charleston,* 741 F.3d at 772–74 (concluding that, in dismissing the plaintiff from a graduate program, "[i]t may have been unfair for the university not to follow its own procedures . . . but it was not unconstitutional"); *Osteen v. Henley,* 13 F.3d 221, 225 (7th Cir.1993) (concluding no due process violation resulted from failure to follow the university's student judicial code); *Smith v. Utah Valley Univ.*, 619 F. App'x 559, 560, 2015 WL 7074580 (7th Cir. 2015)

18

(same). As for Hasselbacher's decision to attach the criminal complaint to her investigation (Dkt. 1 ¶ 174), recent Seventh Circuit case law allows consideration of criminal charging documents in university proceedings. *See Hess*, 839 F.3d at 674.

Cephus received all the process that was due, and the alleged wrongs he complains of do not violate the Constitution. His claim should be dismissed.

### C.     The university's disciplinary proceedings did not present Cephus with an unconstitutional choice.

Several courts have addressed whether postponement of a college disciplinary hearing until resolution of related criminal charges is constitutionally required. All have rejected this argument. None have found that the student faced an unconstitutional choice about whether to testify at the student disciplinary hearing. Most courts have determined the student could elect to remain silent during the hearing and therefore the testimony would be entirely voluntary and not implicate Fifth Amendment concerns.

In *Hart v. Ferris State College*, the court surveyed case law around the country and noted that courts have all rejected plaintiff's claim that his Fifth Amendment right against self-incrimination in parallel criminal proceedings mandated a stay of university civil proceedings. 557 F. Supp. 1379 (W.D. Mich. 1983). In *Hart*, the court found that under the school's disciplinary hearing procedure, the student could elect to remain silent at the hearing and that no

inference pointing to guilty could be drawn. Accordingly, the court held the testimony would be voluntary and the Fifth Amendment did not apply. *Id*. at 1385. Here, Cephus alleged the university's policy indicates respondents are expected to answer questions during disciplinary hearings and the policy contains no provision stating no negative inference would be drawn from non-participation. (Dkt. 1 ¶ 197.) Other than the Plaintiff's speculation, however, he did not allege the hearing panel was entitled to draw a negative inference or that it actually did draw a negative inference based on Cephus's decision not to testify.

A similar analysis was used to decide that a student's testimony at a college disciplinary hearing was not compelled. *Gabrilowitz v. Newman,* 582 F.2d 100 (1st Cir. 1978). The court described the position of a student whose testimony is not compelled as follows:

> Appellee's testimony would be, therefore, entirely voluntary and subsequently admissible at the criminal case. Although the possibility of expulsion may make participation a wise choice, the hearing procedures do not place appellee "between the rock and the whirlpool." *Garrity v. New Jersey, supra,* 385 U.S. at 498. He can, if he wishes, stay out of the stream and watch the proceedings from dry land. But, if he does so, he forfeits any opportunity to control the direction of the current. Appellee must decide whether or not to testify at the hearing with the knowledge that, if he does, his statements may be used against him in the criminal case.

*Gabrilowitz*, 582 F.2d at 104. "Although the choice facing him is difficult, that does not make it unconstitutional." *Id*.; *See also DeVita v. Sills,* 422 F.2d 1172,

1178–80 (3rd Cir. 1970) (Fifth Amendment does not require postponement of civil proceedings whenever related criminal charges are pending); *see also Jones v. City of Indianapolis,* 216 F.R.D. 440, 450 (S.D. Ind. 2003) (the "Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings.") *but see, e.g., Doe v. City of Chicago,* 360 F. Supp. 2d 880, 881 (N.D. Ill. 2005) (discussing a court's inherent power to stay civil proceedings in federal court pending criminal cases).

A university's disciplinary proceedings are not civil actions. In *Nzuve v. Castleton State College*, the court found that at the university proceeding, the plaintiff could remain silent, without his silence being used against him, and if he provided testimony, it would be his voluntary election. 335 A.2d 321, 326 (Vt. 1975).

> The election to speak or remain silent is not confined to the college court proceedings. It is the same election that the plaintiff must make when, after appropriate warning, he is questioned by police or other enforcement officials. And the same results ensue; his silence may not be used against him, while his statements, if contradictory or incriminating, may. It is also the same choice he would be compelled to make if deposed in a related civil action.

*Id.* at 325–26. The court therefore rejected plaintiff's argument that the Fifth Amendment applied and refused to stay the university proceedings. *Id.* at 326.

Other courts have found that if students' testimony at the hearing is considered compelled because of the threat of expulsion, then that testimony would *not* be admissible in the parallel criminal proceeding, and therefore the

Fifth Amendment rights are again not implicated. In *Furutani v. Ewigleben,* 297 F. Supp. 1163 (N.D. Cal. 1969), the plaintiffs were students charged by the college authorities with unlawful actions during campus demonstrations. A variety of criminal charges, based on the same actions, were brought against the plaintiffs.

In refusing to order the postponement of any expulsion hearings until after the criminal trials, the *Furutani* court reasoned that if the students are forced to incriminate themselves at the disciplinary hearing to avoid expulsion, then under *Garrity v. New Jersey,* 385 U.S. 493 (1967), such incriminating statements would be inadmissible in any subsequent criminal proceeding because they would have been obtained by compulsion. Therefore, the court found the proposed disciplinary hearings posed no threat to the Fifth Amendment rights of the students. *See also Keene v. Rodgers,* 316 F. Supp. 217, 221–22, n.4 (D. Me. 1970).

Likewise, the *Nzuve* court explained that staying student disciplinary proceedings while criminal matters "run their long course of trial and appeal" would allow for an 'end run' around the disciplinary rules and procedures of the college. 335 A.2d at 325. *Nzuve* concluded:

> Educational institutions have both a need and a right to formulate their own standards and to enforce them; such enforcement is only coincidentally related to criminal charges and the defense against them.

*Id.* Requiring postponement when there are concurrent criminal proceedings would have the perverse effect of limiting the university's ability to enforce conduct standards in the most serious cases.

The university's parallel disciplinary proceedings do not, as a matter of law, place Cephus or others similarly facing criminal and disciplinary charges, in a constitutionally untenable position.

### D.    Cephus has not exhausted available state procedures.

"The whole idea of a procedural due process claim is that the plaintiff is suing because the state failed to provide adequate remedies." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003). Although "a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist." *Id.*

The State of Wisconsin makes available extensive post-deprivation remedies, negating a due process claim. *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008).  "Only if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards" due. *Id.* (quoting quoting *Swank v. Smart*, 898 F.2d 1247, 1256 (7th Cir. 1990)). In *Michalowicz*, a public employee asserted violation of his due process rights because he was terminated by an allegedly biased hearing panel. 528 F.3d at 535–36. Under Illinois' administrative

23

procedure act, the hearing panel's decision was subject to judicial review. Holding that a state law remedy should not be found to violate the United States Constitution unless it is "inadequate to the point that it is meaningless or nonexistent," the court determined the plaintiff could not state a due process claim. *Id.* at 535 (citation omitted).

Like Illinois, Wisconsin's administrative procedure act, Wis. Stat. ch. 227, affords constitutionally adequate post-deprivation procedures. *See* Wis. Stat. § 227.57 (allowing a court to set aside or modify, or remand a state administrative decision if the agency's decision "has been impaired by a material error in procedure or a failure to follow prescribed procedure," if the agency misinterpreted the law, if its decision is not supported by the evidence, or if it abused its discretion). Thus, the mere availability of state procedures, whether utilized or not, makes federal judicial intervention inappropriate. *See, e.g., Leavell v. Ill. Dep't of Nat. Res.,* 600 F.3d 798, 805 (7th Cir. 2010) (holding failure to avail oneself of available post-deprivation procedures does not equate to a constitutional denial of procedure).

## E. The individual defendants are entitled to qualified immunity.

Blank and Hasselbacher are entitled to qualified immunity with respect to the due process claim because Cephus did not identify a knowing violation of a clearly established federal right. Rather, the gravamen of his claim is that

the Defendants refused to stay Title IX proceedings pending completion of his criminal trial. As discussed in Section C, above, clearly established law dictates that moving forward with student disciplinary proceedings despite collateral criminal proceedings *does not* violate the Constitution.

State government officials are entitled to qualified immunity unless their conduct violated a federal statutory or constitutional right, and the unlawfulness of their conduct was "clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). Although qualified immunity is an affirmative defense, the plaintiff has the burden of demonstrating that the defendant's error was "clearly established." *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017).

The "clearly established" requirement is a "demanding standard," requiring a plaintiff to show that settled law clearly prohibits a defendant's particular conduct. The U. S. Supreme Court recently explained:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority.' It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well

> defined that it is "clear to a reasonable officer that his conduct was
> unlawful in the situation he confronted." This requires a high
> "degree of specificity."

*Wesby*, 138 S. Ct. at 589–90 (citations omitted).

"While [the Supreme] Court's case law 'do[es] not require a case directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (alteration in original) (citation omitted).

Here, Hasselbacher and Blank were adhering to federal law that requires universities to investigate sexual harassment and sexual assault allegations, and in doing so, she was following the Wisconsin Administrative Code chapter UWS 17, which directs her to complete a report and submit it to the Office of Student Conduct & Community Standards. 20 U.S.C. § 1092(f)(8)(A-C) (universities subject to the Clery Act must have grievance procedures for sexual assault allegations that "provide a prompt, fair, and impartial investigation and resolution"); *see also* 34 CFR Part 668 (Regulations governing Violence Against Women Act requiring prompt investigation and resolution), 20 U.S.C. § 1681 *et seq*. (Title IX of the Education Amendments of the Civil Rights Act); Department of Education's 2001 Revised Sexual Harassment Guidance at p. 21 ("[B]ecause legal standards for criminal investigations are different, police investigations or reports may not be determinative of whether harassment occurred under Title IX and do not

relieve the school of its duty to respond promptly and effectively"); Department of Education's September 2017 Q&A on Campus Sexual Misconduct at p. 3 ("A school must adopt and publish grievance procedures that provide for a prompt and equitable resolution of complaints of sex discrimination, including sexual misconduct"); Wisconsin Administrative Code § UWS 17.01, *et seq.*

Cephus's Complaint fails to identify any law supporting the theory that when a university investigates allegations of campus sexual harassment and/or sexual assault, the investigators are violating someone's constitutional due process rights. Further, as identified in the cases cited above, courts around the country have rejected Cephus's arguments. *Marshall,* 170 F. Supp. 3d 1201; *Hart*, 557 F. Supp. 1379; *Gabrilowitz,* 582 F.2d 100; *Nzuve,* 133 Vt. 225; *Furutani,* 297 F. Supp. 1163; *Keene,* 316 F. Supp. 217; *Goldberg*, 248 Cal. App.2d 867. Cephus cannot come close to meeting the demanding standard to show it was "clearly established," under Supreme Court or Seventh Circuit precedent, that the defendants' actions would violate his constitutional rights. Accordingly, Blank and Hasselbacher are entitled to qualified immunity and they should be dismissed.

**F.    Official capacity claims against Blank and Hasselbacher must be dismissed because they are not persons under 42 U.S.C. § 1983.**

Federal civil rights statute 42 U.S.C. § 1983 confers no substantive rights; it is a procedural statute that allows a private right of action for persons

to seek redress of constitutional violations. A plaintiff who brings a Section 1983 claim must comply with the statute's procedural requirements as well as satisfy the elements of the underlying constitutional violation. *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997). Before this Court addresses the alleged Fourteenth Amendment violations, it must satisfy itself that Cephus is entitled to proceed against every Defendant under Section 1983.

> Section 1983 states in relevant part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Plaintiffs may only bring claims against "persons" under § 1983. The state is not a "person" under § 1983 and neither are its officials acting in their official capacities. *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989). Therefore, Cephus's Section 1983 due process claims must be dismissed as to Chancellor Blank and Lauren Hasselbacher in their official capacities for lack of "personhood."

## II.   Cephus's Title IX claim must be dismissed because he did not allege facts that could plausibly prove he was discriminated against on the basis of sex.

Title IX of the Educational Amendments of 1972 states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). An educational institution that receives federal funds, and is thus subject to Title IX, is referred to as a "recipient." *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 468 (1999).

Here, Cephus has pled his Title IX claim under the "erroneous outcome theory," which is used when a plaintiff alleges he "was innocent and wrongly found to have committed an offense." *Doe. v. Ind. Univ. – Bloomington*, No. 18-cv-3713, 2019 WL 341760, *8 (S.D. Ind. Jan. 28, 2019) (citing *Yusuf v. Vassar Coll.,* 35 F. 3d 709, 715 (2nd Cir. 1994)). *Yusuf*, which is widely cited as the seminal erroneous outcome case, held "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf*, 35 F.3d at 715. Ultimately, whether styled "'erroneous outcome' or 'selective enforcement' or 'deliberate indifference' or 'archaic assumptions' the claims all ask the same question: whether the alleged facts, if true, raise a plausible inference that the university discriminated ... 'on the

29

basis of sex'?" *Doe v. Columbia Coll. Chi.*, 933 F.3d at 854–55 (citations and quotations omitted).

> A plaintiff making an erroneous outcome claim must first allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. A plaintiff may allege, for example, particular evidentiary weaknesses behind the finding of an offense such as a motive to lie, particularized strengths of the defense, particular procedural flaws affecting the proof. Once the plaintiff has established doubt concerning the accuracy of the proceeding, he must next allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. The *Yusuf* court noted that such allegations might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.

*Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 953 (N.D. Ill. 2017), *aff'd,* 933 F.3d 849 (7th Cir. 2019). Cephus's claim asserts that had the Defendants stayed the student disciplinary proceedings pending outcome of the criminal trial, he would have been able to fully participate in the disciplinary proceedings and could have avoided the finding of responsibility. (Dkt. 1 ¶¶ 205, 209.)  Even if this fact alone was sufficient to cast doubt on the accuracy of the initial findings—which, according to the cases cited in Section C, it does not—Cephus's claim must be dismissed because he did not plead facts sufficient to plausibly allege gender bias. Rather, the initial outcome of the disciplinary hearing can only be attributed to his conscious decision not to provide testimony or evidence.

As for Cephus's claim that the university and the Defendants were biased against men, several courts in this circuit have flat out rejected the very arguments upon which Cephus relies, namely, that pressure from the federal government and societal demands to address campus sexual assault allow a jury to infer bias against men. (*See generally* Dkt 1 ¶¶ 9 – 94.) In *Doe v. Columbia College*, the court cited several cases rejecting erroneous outcome claims based on "general anti-male bias resulting from public and government pressure." *Id.* at 954 (collecting cases). Again, Title IX claims "boil[] down to whether [the university] discriminated against [the plaintiff] 'on the basis of his sex.' That is the test." *Johnson v. Marian Univ.*, 829 F. App'x 731, 732 (7th Cir. 2020) (quoting *Doe v. Columbia Coll. Chi.* 933 F.3d at 854). The Seventh Circuit's fresh rejection in *Johnson* of the very same theory Cephus relies on to assert sex discrimination forecloses his claim:

> Johnson leans on an alleged anti-male, pro-feminist culture at Marian fueled by politics and current events. In particular, he cites the Department of Education's 2011 "Dear Colleague" letter, which pressured universities to prioritize resolving campus sexual assault cases or else lose federal funding. For Marian, the potential loss of federal funds was more than abstract in light of a recent investigation by the Office of Civil Rights—a sub-agency of the Department of Education—into its handling of sexual assault complaints. Johnson also notes Marian's Title IX training educated administrators on the #MeToo movement's impacts. And he highlights campus sexual assault awareness events that featured accounts of mostly female accusers. All of this, Johnson claims, conditioned Marian's Title IX administrators to favor female complainants and discriminate on the basis of sex.

31

*Id.* While these background circumstances may be relevant in analyzing sex discrimination claims, "a plaintiff cannot rely on such generalized information alone; he must combine it with facts creating an inference that, in *his specific case*, the institution treated him differently because of his sex." *Id.* at 732 (emphasis in original). Cephus's Complaint falls short of including facts necessary to meet the plausibility standard in *Iqbal*. He alleges Hasselbacher worked as an investigator at CU Boulder, investigating allegations of sexual misconduct on campus, worked for Domestic Abuse Intervention Services, and acted as a legal advocate in setting addressing sexual assault during law school. (Dkt. 1 ¶¶ 77, 83.) He faults the university for requiring employees to "view an online training called, 'Promoting Equity at UW-Madison by Preventing Sexual Harassment and Sexual Violence.'" (Dkt. 1 ¶ 82.)

But just as in *Johnson,* Cephus's allegations do "not permit a finding of sex discrimination here." He references an article from the independent student newspaper—authored by someone with no apparent connection to Chancellor Blank, Lauren Hasselbacher, or any university official—that asserted males are the perpetrators of sexual assault and women are the victims. (Dkt. 1 ¶ 84.) He pointed to Chancellor Blank's dedication to strengthen efforts to reduce sexual assault and respond swiftly and with compassion, providing resources and support. (Dkt. 1 ¶ 94.) And he criticizes the university's trauma-informed approach to investigating sexual

misconduct, which allegedly "discourages thorough questioning of complainants in the sexual misconduct process to avoid 'further trauma.'" (Dkt. 1 ¶ 5.) "At most, they demonstrate a pro-victim bias, but both women and men can be victims of sexual assault." *Johnson*, 829 Fed.Appx. at 733; *Doe v. Columbia Coll. Chi,* 299 F. Supp. 3d at 953 (citing *Doe v. Univ. of Cincinnati*, 173 F.Supp. 3d 586, 606 (S.D. Ohio 2016) (rejecting "the plaintiff's erroneous outcome claim finding the plaintiff had not alleged an indication of gender bias and instead, 'at worst, [the university's] actions were biased in favor of alleged victims of sexual assault.'").

Because Cephus did not allege facts that, if true, would allow an inference of sex discrimination, his Title IX claim must be dismissed.

## III. Cephus's contract claim against the Board must be dismissed based on state sovereign immunity and because he did not satisfy the conditions precedent to file a contract action.

Wisconsin law only permits a plaintiff to bring a contract claim against the State after the plaintiff follows a specific procedure—the claim must be presented to the Legislature for payment, reviewed by a claims board, and denied before suit can be filed. *See* Wis. Stat. §§ 16.007, 775.01; *Roman Catholic Found., UW-Madison, Inc. v. Regents of Univ. of Wis. Sys.*, 578 F. Supp. 2d 1121, 1143 (W.D. Wis. 2008) (citing *Brown v. State*, 230 Wis. 2d 355, 367, 602 N.W.2d 79 (Ct. App. 1999)). Because Cephus does not allege he has

33

gone through this process, sovereign immunity bars his breach of contract claim and it must be dismissed.

Article IV, § 27 of the Wisconsin Constitution declares, "[t]he legislature shall direct by law in what manner and in what courts suits may be brought against the state." For that reason, the State cannot be sued without the legislature's explicit consent. *PRN Assocs. LLC v. State, Dep't of Admin.,* 2009 WI 53, ¶¶ 51–52, 317 Wis. 2d 656, 766 N.W.2d 559; *Mayhugh v. State*, 2015 WI 77, ¶¶ 34–35, 364 Wis. 2d 208, 867 N.W.2d 754. The State's sovereign immunity extends to its arms and agencies. "Generally, for purposes of sovereign immunity, an action against a state agency or board is deemed an action against the state." *Mayhugh*, 364 Wis. 2d 208, ¶ 13. The University of Wisconsin System schools are arms of the State of Wisconsin and therefore entitled to raise sovereign immunity as a defense. *Id*. ¶¶ 23–32.

Absent legislative consent to suit, sovereign immunity deprives the court of personal jurisdiction over the State if the defense is properly raised. *Lister v. Bd. of Regents of the Univ. of Wis. Sys.* 72 Wis. 2d 282, 291, 240 N.W. 2d 610 (1976); *Payment of Witness Fees in State v. Brenizer*, 188 Wis. 2d 665, 673–75, 524 N.W.2d 398 (1994). The plaintiff bears the burden of proving jurisdiction once the sovereign immunity defense is interposed. *State v. Advance Mktg. Consultants, Inc.*, 66 Wis. 2d 706, 712–13, 225 N.W.2d 887 (1975).

Here, the Complaint alleges UW-Madison breached a contract with Cephus by not adhering to UW-Madison's policies and procedures governing the student disciplinary system. (Dkt. 1. ¶¶ 289-294.) However, the Complaint does not allege compliance with Wis. Stat. §§ 16.007 and 775.01 by first seeking payment from the Legislature.

These procedural requirements are mandatory and apply to breach of contract claims. *CleanSoils Wis., Inc. v. DOT,* 229 Wis. 2d 600, 610, 599 N.W.2d 903 (Ct. App. 1999) (claim seeking payment for remediation work based on unjust enrichment barred); *Weis v. Bd. of Regents of the Univ. of Wisconsin Sys.,* 837 F. Supp. 2d 971, 977 (E.D. Wis. 2011) ("Plaintiffs' claims for breach of contract, promissory estoppel and unjust enrichment sound in contract or quasi-contract. . . . [B]ecause Plaintiffs never submitted any of their contract-related claims to the Wisconsin Claims Board pursuant to Section 16.007 of the Wisconsin Statutes, those too are barred.)

Cephus did not adhere to these procedural requirements, so his contract claim must be dismissed.[6]

---

[6] In addition, Cephus did not identify a contractual provision that was breached such that a breach of contract claim could proceed on the merits.

**IV.    Cephus's estoppel and reliance claim against the Board must be dismissed based on state sovereign immunity and because he did not plead compliance with Wisconsin's Notice of Claim statute.**

Cephus's fourth claim, based on promissory estoppel, must be dismissed for the same reasons his contract claim, as promissory estoppel is a quasi-contract claim. *Weis,* 837 F. Supp. 2d at 977. Yet, even if it could be construed as a tort claim, it must still be dismissed based on State sovereign immunity. *Id.* (citing *Carlson v. Pepin County,* 167 Wis. 2d 345, 356, 481 N.W.2d 498 (Ct. App. 1992)).

Even if Cephus had named a university employee individually, his estoppel and reliance claim cannot survive a motion to dismiss because he did not plead compliance with Wisconsin's notice of claim statute, which he must do to survive the claims he brought against state employees. *Yotvat v. Roth*, 95 Wis. 2d 357, 290 N.W.2d 524 (Ct. App. 1980) superseded by statute on other grounds as stated in *Modica v. Verhulst*, 195 Wis. 2d 633, 640-41, 536 N.W.2d 466 (Ct. App. 1995). Under Wis. Stat. § 893.82(3), "no civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties, . . . unless within 120 days of the event causing the injury, ... the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim."

36

The Wisconsin Supreme Court has "repeatedly stated that requirements of § 893.82 are not general guidelines but, rather, a claimant must strictly comply with the words in the statute in order to proceed with his or her claim." *Sorenson v. Batchelder*, 2016 WI 34, ¶ 22, 368 Wis. 2d 140, 885 N.W.2d 362. "[F]ailure to comply with a statutory mandate pertaining to the exercise of subject matter jurisdiction may result in a loss of the circuit court's competency to adjudicate the particular case before the court." *Vill. of Trempealeau v. Mikrut*, 2004 WI 79, ¶¶ 8-10, 273 Wis. 2d 76, 681 N.W.2d 190; *Ibrahim v. Samore*, 118 Wis. 2d 720, 726, 348 N.W.2d 554 (1984).

In *Town of Burke v. City of Madison,* the court of appeals articulated three reasons why a particular claim may be exempted from the notice of claim statute; this case does not satisfy any of them. 225 Wis. 2d 615, 625, 593 N.W.2d 822, (Ct. App. 1999) (analyzing Wis. Stat. § 893.80). They are:

> (1) whether there is a specific statutory scheme for which the plaintiff seeks exemption; (2) whether enforcement of the notice of claim requirements found in Wis. Stat. § 893.80 would hinder a legislative preference for a prompt resolution of the type of claim under consideration; and (3) whether the purposes for which § 893.80 was enacted would be furthered by requiring that a notice of claim be filed.

*E-Z Roll Off, LLC v. Cty. of Oneida*, 2011 WI 71, ¶ 23, 335 Wis. 2d 720, 800 N.W.2d 421 (citing *Town of Burke*, 225 Wis. 2d at 625.) The first factor—compliance with a statutory scheme that conflicts with the notice of claim requirements—does not apply here because "Estoppel and Reliance" is a

37

common law claim. *See, e.g., Champine v. Milwaukee Cty.,* 2005 WI App 75, ¶ 21, 280 Wis. 2d 603, 696 N.W.2d 245 (citing *Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 698, 133 N.W.2d 267 (1965)) (promissory estoppel). No statutory violations are alleged. (Dkt. 1 ¶¶ 295-300.) The second factor—legislative preference for prompt resolution—also does not apply because the alleged actions do not violate state statute. The legislature has not spoken directly to the claims at issue here. The third factor asks whether the purposes for which the notice of claim statute were enacted would be furthered by requiring a notice be filed. The purposes of section 893.82 are to:

> (a)   Provide the attorney general with adequate time to investigate claims which might result in judgments to be paid by the state.
> (b)   Provide the attorney general with an opportunity to effect a compromise without a civil action or civil proceeding.
> (c)   Place a limit on the amounts recoverable in civil actions or civil proceedings against any state officer, employee or agent.

Wis. Stat.§ 893.82 (1) (a)-(c).

These purposes are furthered in this case. Without a notice of claim, the Attorney General's office was unaware of the specific allegations being made under state law, and without such knowledge, the state was deprived the ability to investigate and, if necessary, attempt to remedy the situation before a lawsuit is filed. The complaint does not allege any reason why Wis. Stat. § 893.82(3) does not apply to the present action, and there appears to be none.

## CONCLUSION

Cephus pled too much but not enough: he pled himself out of court on the stigma-plus claim and otherwise failed to allege the university disclosed information that harmed his reputation. He did not plead facts beyond conclusory allegations to meet the plausibility threshold to state a claim for sex discrimination under Title IX. His state claims should be dismissed with prejudice because the Board (and UW-Madison) enjoy sovereign immunity and because Cephus did not plead conditions precedent for bringing contract, quasi-contract, or tort claims against the state or state actors.

The Board of Regents, Chancellor Blank, and Lauren Hasselbacher respectfully ask this court to dismiss Cephus's Complaint in its entirety and with prejudice.

Dated: April 26, 2021

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

/s/ Anne Bensky
ANNE M. BENSKY
Assistant Attorney General
State Bar #1069210

ANN M. PEACOCK
Assistant Attorney General
State Bar #1046175

39

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9451 (Bensky)
(608) 266-9230 (Peacock)
(608) 294-2907 (Fax)
benskyam@doj.state.wi.us
peacockam@doj.state.wi.us