[Case]

| Date | Notes Attachment | Email |
|---|---|---|
| | | |
| | | |
| 2018.04.25 | Met with ▮ in my office. Generally discussed process, options for initiating a formal investigation. | |
| | | |
| 2018.05.24 | Written statement provided by ▮ | |
| 2018.05.24 | I spoke with Lester Pines as a follow-up to the two page submitted statement. In response to questions, Lester said the following: It is unclear how or why ▮ did not see ▮ run out of the apartment.<br>To the best of Lester's knowledge, there was no contact between Quintez and ▮ and that ▮ was in a different room either asleep or unconscious.<br>Lester said it is unclear who exactly lives in the apartment, but there was a reference to a photo of Quintez's dad in the room.<br>When asked about ▮ state, Lester said she described it as being closed to passed out.<br>Lester pointed out the information about pulling ▮ head towards CP's penis and trying to get her to engage in oral sex. Lester said it was significant that when ▮ was sleeping on her stomach and it required Quintez to lift her leg to have sex with her which indicates it was not a voluntary act. Lester stated it was clear that QUintez was attempting to have a threesome with the girls because he was encouraging ▮ to engage in sexual contact with ▮ and because he had his hand on ▮ while he had intercourse with ▮ | |
| 2018.05.24 | Spoke with ▮ via phone. Discussed potential charges for Danny Davis, including Sexual Harassment and criminal conduct. Discussed potential sanctioning process. | |
| 2018.06.14 | LMH spoke with ▮ via phone. ▮ parents were on the call as well, and ▮ gave me permission to speak with them as well.<br>LMH answered questions about privacy, and explained that the process is not confidential and that the parties involved have a right to review witness names to afford them due process. I explained that names are not included in the report. I stated that it was possible her name could be printed somewhere in a hearing packet.<br>Her father said he had told MPD that ▮ would not participate in an investigation and ▮ declined to speak to police. The family is concerned that ▮ participating in the UW investigation would involve her in the criminal investigation.<br>I explained that she is not required to participate, but said that I believe she has important information that I would appreciate she share. They asked if they could call back in a few minutes after they discuss as a family.<br>They called back and said ▮ was declining to participate, and she stated that she does not know if she has relevant information. ▮ | |

| | | |
|---|---|---|
| | said she feels as though she is wrapped up in something she should not be and wants to stay out of it.<br>I explained our policies on retaliation and the family said that was not their concern and simply don't want her involved in criminal case.<br>■■■ said she would contact me if she changed her mind. I told her I would contact her before I concluded the investigation and ask again if she was willing to provide any information. | |
| 2018.06.19 | Pines emails and states that he hopes to have MPD report following day. | |
| 2018.07.19 | Meeting with ■■■ ■■■ and Lester Pines. Continue to discuss process, timeline, etc. Pines states that he has learned that MPD report will not be available for the foreseeable future. | |
| 2018.07.20-<br>2018.07.26 | Back and forth voicemails to Shelley Gillete. | |
| 2018.07.26 | Via phone, spoke with Shelley Gillete (Victim Witness Unit DAs Office). Gillete confirmed that Deputy DA Andrea Raymond is assigned to the case. Gillete said that MPD is still doing follow-up and needs to issue some search warrants. Gillete explained this is not unusual. Gillete said there has not been any charging decision and that is why the release of the report is delayed.<br>Gillete said that she will speak with Raymond about other options for allowing the university access to the report, such as releasing it under seal (as requested by one of the complainant's attorneys). Gillete said they would need permission from DA Ozan to do this. Gilllete said they hoped to make charging decisions in mid-August, but they cannot make any promises. | |
| 2018.07.26 | Emails to parties regarding known status of MPD report and request for participation. | |
| 2018.07.31 | Phone call with ■■■ and ■■■■■, 1:17pm<br><br>■■■s asked about whether Respondents can provide information if they don't participate in interview, and I explained that they could and that we collect as much information as we can from everyone (parties and witnesses) and the decision maker just has to use what is available.<br>■■■s asked if Respondents did not participate in an interview whether there would be an "inference of guilt." I explained there would not be any instruction along those lines and explained the preponderance of the evidence standard and again explained that decision maker only can use what is prevented to him.<br>■■■s asked whether I would make a credibility statement for parties. I said I do not make those types of determination, but that decision maker would use information within report to determine credibility, such as consistent/inconsistent statements, information supported or denied by witnesses, corroborated by texts, photos, etc.<br>■■■s askeTd whether we would charge someone for not telling the truth. I said there is such a charge but it is a fairly high bar and we would have to believe that someone purposefully provided information they knew to be false.<br>They asked about timing and I explained it depends on information we receive in text week or so, including a meeting with one of the | |

| | | |
|---|---|---|
| | Respondents that week. I explained that investigation continues to move forward despite decision of individual parties. I said if no new information was provided as of today, it would still be at minimum a week before any report would be issued to parties.<br>Generally I stated that I am not aware of further information I need to collect (that's available, so not including police report) but that I still need to meet with a party on Wednesday, collect my notes and make the report. I said occasionally information is brought to me that I was not previously aware of and that I need to balance a thorough report with a timely investigation.<br>They asked about academic accommodations and possibility of taking online courses. We discussed potential deferments, etc. and I offered to have someone from Dean of Students Office reach out. | |
| 2018.08.09 | Interview with ▇ | |
| 2018.08.10 | Call to ▇ (in response to email) I reviewed the timeline of the process, in which we initially did not have interviews from any of the four parties, and that after emails were sent out at the end of July regarding the inability to obtain the MPD report, additional information was provided by multiple people, which spurred more investigation from our office.<br>▇ suggested multiple times that that investigation was being purposefully delayed for the benefit of Respondents. Hasselbacher reviewed timeline multiple times and explained the need for due process. Hasselbacher told ▇ that there will be deadlines provided (approximately two weeks) to Respondents and the investigation will not be indefinite. Repeated many times that we cannot confirm deadlines because if we get new or different information, for example access to the MPD report, timelines are likely to change.<br>▇ mentioned suspensions out of Athletics multiple times, and Hasselbacher stated that the suspension decisions are separate from the investigative process out of the OC. Hasselbacher explained duty to be neutral investigator and conduct a fair, prompt investigation with equitable participation so that the process had integrity and can be trusted. Conversation lasted approximately 40 minutes. | |
| 2018.08.10 | Jennifer Horace emailed ▇ requesting an appointment. | |
| 2018.08.10 | Jennifer Horace emailed ▇ requesting an appointment at 11:43AM.<br>Jennifer Horace received an Outlook Read Receipt indicating that ▇ read this email at 12:11PM. | |
| 2018.08.13 | ▇ responded to Jennifer indicating that she would be willing to participate in a phone meeting. Jennifer respondent scheduling an appointment for August 14, 2018. | |
| 2018.08.13 | Jennifer Horace emailed ▇ a second time requesting an appointment. | |
| 2018.08.13 | Jennifer Horace called ▇ | |
| 2018.08.13 | Jennifer Horace sent an email to ▇ requesting he confirm that he spoke with an investigator in June of 2018. The email was a follow up to a voicemail. | |

| | | |
|---|---|---|
| | Jennifer Horace received an Outlook read receipt indicating the ▮ read Jennifer's email sent on August 13, 2018. | |
| 2018.08.14 | Jennifer Horace sent ▮ an email reminder about appointment that day and received an Outlook Read Receipt. ▮ emailed and cancelled the meeting. In a separate email she requested an alternative meeting time. | |
| 2018.08.16-22 | Jennifer contacted ▮ to schedule an appointment. However ▮ was unable to attend these meeting times. Back and forth communication continued until August 22, 2018 when ▮ declined participation. | |
| 2018.08.24 | Call with Lester Pines: He's going to send another photo from Q's twitter feed. It's not directly about ▮ or ▮ but "about his attitude towards women" from January 19. I said that we no longer expect interviews from the Respondents and are continuing to complete the report. I said ideally the initial report will be distributed next week, but that depends on no new information. | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |